The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 21, 2020

## 2020COA82

## No. 18CA2309, *Grenillo v. Estate of Joel Hansen* — Courts and Court Procedure — Limitation of Actions — Commencement of New Action Upon Involuntary Dismissal

Under specified circumstances, Colorado's remedial revival
statute, section 13-80-111, C.R.S. 2019, allows a plaintiff to refile
an action that was dismissed for lack of jurisdiction within ninety
days after dismissal, despite the running of the statute of
limitations. A division of the court of appeals holds, as a matter of
first impression, that the remedial revival statute cannot be invoked
against a defendant who was not named as a defendant in the
original action. The majority therefore affirms the district court's
dismissal of the plaintiff's complaint.

The dissent argues that the Colorado Supreme Court's decision in *Currier v. Sutherland*, 218 P.3d 709 (Colo. 2009), requires reversal of the district court's dismissal of the plaintiff's complaint.

COLORADO COURT OF APPEALS 2020COA82

Court of Appeals No. 18CA2309
City and County of Denver District Court No. 18CV31785
Honorable David H. Goldberg, Judge

Sherri Grenillo,

Plaintiff-Appellant,

v.

Estate of Joel Hansen,

Defendant-Appellee.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TERRY
Welling, J., concurs
Berger, J., dissents

Announced May 21, 2020

Keating Wagner Polidori Free P.C., Melissa A. Hailey, Denver, Colorado; Mager
Law Group LLC, Tara M. Mager, Denver, Colorado, for Plaintiff-Appellant

Wheeler Law P.C., Karen H. Wheeler, Jami A. Maul, Nicholas J. Deaver,
Greenwood Village, Colorado, for Defendant-Appellee

The Sawaya Law Firm, John Poor, Denver, Colorado, for Amicus Curiae
Colorado Trial Lawyers Association

¶ 1     Under specified circumstances, Colorado's remedial revival statute, section 13-80-111, C.R.S. 2019, allows a plaintiff to refile an action that was dismissed for lack of jurisdiction within ninety days after dismissal, despite the running of the statute of limitations. We conclude that the remedial revival statute cannot be invoked against a defendant who was not named as a defendant in the original action. We therefore affirm the district court's judgment dismissing the complaint of plaintiff, Sherri Grenillo, against defendant, the Estate of Joel Hansen.

## I.     Background

¶ 2     Grenillo and the decedent, Joel Hansen, were involved in a car accident on September 3, 2014. Grenillo filed a negligence claim naming the decedent as the defendant on August 31, 2017, three days before the applicable three-year statute of limitations was set to expire. § 13-80-101, C.R.S. 2019. After failing to accomplish service of the complaint, Grenillo found out that the decedent had passed away, but Grenillo was unable to confirm the date of death. She therefore sought to serve the decedent by substituted service on his insurer.

¶ 3     In January 2018, the decedent's wife and his insurer filed motions to quash, indicating that the decedent had died on August 15, 2017.  Grenillo conceded that the district court lacked personal jurisdiction over the decedent and filed a notice of inability to perfect personal service on the named defendant.  The court dismissed the case without prejudice for lack of jurisdiction on February 15, 2018.  The decedent's wife filed a motion for reconsideration, urging the district court to dismiss Grenillo's claim with prejudice, but the court denied the motion.

¶ 4     Grenillo opened an estate for the decedent and filed a new complaint naming the estate as defendant on May 14, 2018, more than eight months after the statute of limitations had expired.  The new complaint was based on the same allegations as the original complaint.

¶ 5     The estate moved to dismiss the new action as time barred because it was filed outside the three-year statute of limitations. § 13-80-101.  But Grenillo maintained that her suit was timely because it was filed within ninety days after the dismissal of the original suit, and therefore satisfied the requirements for application of the remedial revival statute.

2

¶ 6    The court granted the estate's motion and dismissed the case with prejudice.  Relying on *Currier v. Sutherland*, 218 P.3d 709 (Colo. 2009), the district court analyzed whether it had personal and subject matter jurisdiction over the claim.  The court concluded that because it retained subject matter jurisdiction, the action was not dismissed for "lack of jurisdiction" as provided in section 13-80-111.  The court also noted that because it was Grenillo who had moved to dismiss the original action, the dismissal was not involuntary.  The court therefore held that Grenillo's second action could not be brought under the remedial revival statute and was time barred.  The court also granted the estate's motion for attorney fees and costs.

## II.    The Remedial Revival Statute

¶ 7    The remedial revival statute is titled "Commencement of new action upon involuntary dismissal," and states in relevant part:

> If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff or, if he dies and the cause of action survives, the personal representative may commence a new action upon the same cause of action within ninety days after the termination of the original action . . . and *the defendant* may interpose any defense,

counterclaim, or setoff which might have been interposed in the original action.

§ 13-80-111(1) (emphasis added). (We note that although the title of the statute mentions "involuntary dismissal," the text of the statute does not.)

¶ 8 When properly invoked, the remedial revival statute tolls the running of the applicable statute of limitations in a case where the original action has been terminated for lack of jurisdiction or improper venue. *Nguyen v. Swedish Med. Ctr.*, 890 P.2d 255, 256 (Colo. App. 1995). The statute reflects a legislative intent to enable litigants to avoid hardships that might result from strict adherence to the provisions of statutes of limitation. *Soehner v. Soehner*, 642 P.2d 27, 28 (Colo. App. 1981).

¶ 9 Grenillo urges us to reverse the district court's order dismissing her action against the estate and to conclude that the remedial revival statute applies to her action. However, under the plain language of the statute, we conclude that the remedial revival statute does not apply to revive a claim against a defendant who was not a party to the original action.

## A. The Plain Language of the Statute

¶ 10 Our review of statutory provisions is de novo. *Cowen v. People*, 2018 CO 96, ¶ 11. When interpreting a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *Id.* at ¶ 12. We start by examining the plain meaning of the statutory language. *Id.* A court should always turn first to the plain meaning rule because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Consequently, if the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further. *Id.*

¶ 11 The plain language of the statute does not allow a plaintiff to bring her revived action against a new defendant — in this case, the estate of the decedent — that was not a party to the original action. As relevant here, section 13-80-111(1) addresses the situation where a *plaintiff* dies, and it provides that if the cause of action survives, a new action may be brought within ninety days by the personal representative of the *deceased plaintiff*. *See* § 13-80-111(1) ("[T]he *plaintiff or, if he dies* and the cause of action survives,

5

the personal representative may commence a new action . . . .")
(emphasis added).

¶ 12    The statute makes no reference to the situation where the new suit is brought against a different defendant, such as the estate of the originally named defendant.  Instead, unlike the reference to a deceased *plaintiff's estate*, the statute only refers to the defendant by saying, "*the defendant* may interpose any defense, counterclaim, or setoff which might have been interposed in the original action." *Id.* (emphasis added).

¶ 13    Because the statute simply does not address the situation where the *defendant* is deceased, or where a different defendant (such as an estate) replaces the original defendant, we conclude that the legislature intended the statute to be invoked only against the original defendant, and not against a different defendant, including a later-named estate of the defendant.

¶ 14    In drafting the remedial revival statute, the legislature could have included language similar to its reference to a substituted *plaintiff*, so that a decedent's estate could be substituted for a deceased defendant, but it did not do so.  *See Mook v. Bd. of Cty. Comm'rs*, 2020 CO 12, ¶ 35 (noting that just as important as what

6

the statute says is what the statute does not say and concluding that omission of qualifying language was therefore intentional).

¶ 15 Courts in other jurisdictions, interpreting savings statutes similar to our remedial revival statute, have concluded that their statutes cannot be used to allow claims against a different defendant than the one named in the original complaint. *See Children's Hosp. v. Ohio Dep't of Pub. Welfare,* 433 N.E.2d 187, 189-90 (Ohio 1982) (savings statute can only be invoked when original action and new action are substantially the same; actions are not substantially the same where parties in the new action and the original action are different); *Turner v. Aldor Co. of Nashville, Inc.,* 827 S.W.2d 318, 321 (Tenn. Ct. App. 1991) (same); *see also Vari v. Food Fair Stores, New Castle Inc.,* 205 A.2d 529, 530-31 (Del. 1964) (savings statute only applies to actions involving the same parties); *Hartz v. Brunson,* 2 N.W.2d 280, 281 (Iowa 1942) (same); *Williams v. Zortman Mining, Inc.,* 914 P.2d 971, 973-74 (Mont. 1996) (same); *Rito Cebolla Invs., Ltd. v. Golden W. Land Corp.,* 607 P.2d 659, 666 (N.M. Ct. App. 1980) (same); *Scott v. Nance,* 117 S.E.2d 279, 281 (Va. 1960) (same).

¶ 16    And while we are aware that some other states have made exceptions to the general rule where the change in parties is nominal or where identical interests are represented, the plain language of our statute does not support such an interpretation. *See Estate of Brookoff v. Clark*, 2018 CO 80, ¶ 6 (in interpreting statutes, we may not carve out an exception not provided for in the law; to write a special limitation into a statute is a function of the legislature and not the courts); *see also, e.g., Beilke v. Droz*, 316 N.W.2d 912, 914-15 (Iowa 1982) (concluding that the plaintiff's first personal injury action, brought against liability insurer of driver and owners of the vehicle involved in the accident, could be continued against insured and owners of the vehicle).

### B.    Conflict with Probate Claims Statute

¶ 17    Because of the potential implications for decedents' estates, we think it important to note that adopting Grenillo's interpretation of the remedial revival statute — to allow a plaintiff to use the statute to bring her second action against a defendant (a decedent's estate) that was not a party to the original action — would conflict with a provision of the Probate Code.

¶ 18      In section 15-12-802(2), C.R.S. 2019, the legislature —

apparently recognizing the potential for the filing of claims against a

decedent where the claimant isn't immediately aware that the

decedent has died — paved a slim pathway for the filing of suit

against a decedent's estate. This statute gives a four-month tolling

period after a decedent's death for filing such an action against the

estate. Its provisions indicate a strong policy preference for limiting

claims against decedents' estates.

¶ 19      Grenillo concedes that, because she did not learn the date of

Hansen's death until after that four-month tolling window had

closed, she was unable to complete the Colorado Supreme Court's

approved form, JDF 926SC, Petition for Formal Appointment of

Special Administrator (revised June 2019),

https://perma.cc/NA7D-3YZA, in time to open an estate and

amend her original complaint to name the estate as a defendant, as

permitted under section 15-12-802(2).

¶ 20      Interpreting the remedial revival statute to apply to Grenillo's

suit would set up a conflict between that statute and section 15-12-

802(2). Because of our resolution of this appeal, we do not need to

decide whether there is an irreconcilable conflict between the two

statutes.  *Cf.* § 2-4-205, C.R.S. 2019 ("If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both.  If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.").

### III.    *Currier*'s Dictum Does Not Change Our Analysis

¶ 21    According to Grenillo, the supreme court's decision in *Currier* indicates that the remedial revival statute can be used to revive an action against a defendant who was not a party to the original action.  We do not read *Currier* so broadly.

¶ 22    In *Currier*, the plaintiffs were unaware of the defendant's death and filed an action against him days before the statute of limitations expired.  218 P.3d at 711.  By the time the plaintiffs became aware of his death, the statute of limitations had expired.  *Id.*  The plaintiffs opened an estate for the decedent and amended their complaint to name the estate and the administrator of the estate as defendants.  *Id.*  After the new defendants moved to dismiss the action, the district court granted the motion but

10

declined to dismiss the complaint for lack of jurisdiction as plaintiffs had requested. *Id.* Instead, the district court based its dismissal on the running of the statute of limitations. *Id.* On appeal, the plaintiffs argued that the district court should have dismissed their action for lack of jurisdiction. *Id.*

¶ 23    Our supreme court held that the remedial revival statute can be invoked when an action is dismissed based on either personal jurisdiction or subject matter jurisdiction. *Id.* at 712-15. The court, however, concluded that the plaintiffs' action could not be revived because a prerequisite could not be met: the district court did not lack either personal or subject matter jurisdiction over the action when it was dismissed. *Id.* at 715. The court also held that the plaintiffs' amendment did not relate back to the original complaint's filing because the estate did not have notice of the action. *Id.* at 716.

¶ 24    Grenillo relies on language from *Currier* to argue that she can invoke the remedial revival statute in this case. In passing, the supreme court remarked that "[i]f . . . the trial court had no jurisdiction over the claims against [the decedent], the case should have been dismissed for lack of jurisdiction, and the remedial

revival statute can be invoked." *Id.* at 712. According to Grenillo, our supreme court condones the use of the remedial revival statute against a *new defendant* in a case like hers.

¶ 25 However, the court's comment did not address an issue that was actually decided in *Currier*, and the *Currier* court was not faced with the facts of our case. When the plaintiffs' complaint was dismissed in *Currier*, it had already been amended to name the estate of the (by then) deceased defendant as well as the special administrator as defendants. *Id.* at 711. The *Currier* court therefore did not need to consider whether the statute could be applied, as Grenillo argues here, *against a defendant who was not a party to the original action.* Rather, if the *Currier* plaintiffs had filed a new action under the remedial revival statute, it would have been filed against the very same defendants who were named in the original action.

¶ 26 Thus, the language relied on by Grenillo is inapplicable here. To the extent it can be read to apply to our facts, it is mere dictum, and for the reasons we have explained, we do not find it persuasive. *Currier* therefore does not preclude our holding.

## IV. Justice Eid's Opinion in *Currier*

¶ 27   Grenillo further relies on the following language of Justice Eid's opinion in *Currier*:

> Under the majority's interpretation of the statute, had the plaintiffs in this case moved for a voluntary dismissal of the case based on lack of personal jurisdiction, and had the trial court dismissed the case at that point, the dismissal would have been one for lack of "jurisdiction" (that is, lack of personal jurisdiction), and the plaintiffs could have taken advantage of the provision's 90-day refiling period.  The plaintiffs' mistake, then, was to amend their original complaint to add the proper defendants, rather than dismissing and refiling the action to name the proper defendants.

218 P.3d at 717 (Eid, J., concurring in part and concurring in the judgment in part) (citing *id.* at 714 (majority opinion)).

¶ 28   Grenillo appears to have used Justice Eid's opinion as the playbook for filing her new complaint in the district court.  We note that Justice Eid was not necessarily advocating such a procedure, but was instead criticizing the implications of the majority's opinion.  In any event, her opinion is not binding on this court, and for the reasons discussed above, we conclude that Grenillo's

attempt to find a way around the statute of limitations is unsuccessful.

## V.     Attorney Fees and Costs

¶ 29    Grenillo argues that because the district court erred in dismissing her complaint, the court also erred in awarding attorney fees to the estate under section 13-17-201, C.R.S. 2019, and in awarding costs.  Given our conclusion that the suit was properly dismissed, we conclude that the court did not err in awarding fees and costs to the estate.

¶ 30    Because the estate has prevailed in this appeal, we likewise conclude that it must be awarded its appellate attorney fees and costs.

## VI.   Conclusion

¶ 31    The judgment is affirmed, and the case is remanded to the district court to award the estate's attorney fees and costs incurred in this appeal.

JUDGE WELLING concurs.

JUDGE BERGER dissents.

14

JUDGE BERGER, dissenting.

¶ 32    The majority opinion is well reasoned and faithful to the words of the statute that we are tasked with construing and applying.  So why am I dissenting?  I dissent because the majority's opinion is not faithful to a recent decision of the Colorado Supreme Court. *See Currier v. Sutherland*, 218 P.3d 709 (Colo. 2009).  The majority attempts to avoid this problem by characterizing the portions of the supreme court's opinion that are inconsistent with the majority opinion as dictum.

¶ 33    For two reasons I cannot travel on this path.  First, as a number of federal courts have said regarding statements of the United States Supreme Court, there is dictum and then there is Supreme Court dictum.  *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1064-65 (8th Cir. 2017) (collecting cases).  While this case does not implicate opinions of the United States Supreme Court, the Colorado Supreme Court is the court of last resort in Colorado and, on state law issues, that court has the final word.  *Willhite v. Rodriguez-Cera*, 2012 CO 29, ¶ 9.  I think that position requires us to give opinions of the Colorado Supreme Court the same respect as lower courts must afford the opinions of the

United States Supreme Court. By extension, that means that we should apply the dictum doctrine with special care, particularly when we address recent decisions of the Colorado Supreme Court.

¶ 34 Second, and perhaps even more persuasively, Justice Eid concurred in part and concurred in the judgment in part in *Currier*, 218 P.3d 709, 716-17 (Eid, J., concurring in part and concurring in the judgment). In arguing against the majority's construction of the statute, Justice Eid explained clearly the consequences of the majority's holding. *Id.* at 717. Justice Eid accurately foreshadowed the case that is now before us and explained clearly why the majority's rule requires that a complaint of the type presented to us withstands dismissal. *Id.*

¶ 35 The hypothetical facts addressed by Justice Eid are the facts of this case. The consequences addressed by Justice Eid mandate a reversal in this case. Faced with Justice Eid's separate opinion, the *Currier* majority said nothing to disabuse anyone of the clear consequences detailed in the separate opinion. This tells me that the majority decided *Currier* with a full understanding of those consequences.

¶ 36    Maybe the supreme court didn't mean what it said in *Currier*, and maybe if that court takes another shot at the question presented in this case it will disavow what it said there, either on the basis of the dictum doctrine or otherwise. But that task is solely for the supreme court, not this court. *See People v. Novotny*, 2014 CO 18, ¶ 26.

¶ 37    For these reasons, as required by *Currier*, I would reverse the judgment of the district court and direct the district court to reinstate the plaintiff's complaint. I respectfully dissent.